SOMERS LUMBER COMPANY, PLAINTIFF-RESPONDENT, v. HARRY BEST, APPELLANT, AND WILLIAM H. COBB, JR., DEFENDANTS.

Argued November 1, 1932—Decided January 31, 1933.

For the appellant, *George A. Bourgeois.*

For the respondent, *Cole & Cole.*

The opinion of the court was delivered by

PARKER, J. The suit is against a surety for the faithful performance of a subcontract relating to the construction of a building. The defense principally, if not solely, relied on, and now argued here, is that plaintiff paid to defendant Cobb, its subcontractor, for whom appellant Best was surety, "moneys in advance of the due dates and time provided in said agreement between the plaintiff and said Cobb, and without the knowledge and consent of this answering defendant [surety] and thereby released this defendant from liability on said bond." Only two grounds of appeal are argued, viz., No. 1, that the court refused to direct a verdict for defendant, and No. 6, which reads as follows:

"Because the court erred in charging the jury that plaintiff was entitled to recover $3,556.33, plus $1,419.76, in all $4,976.09, without allowing credit for $1,392.60, balance on the contract at the time the plaintiff took over the work."

In order to understand the points made, it is necessary to examine in part the text of the guaranty, and to discuss briefly the history of the case.

1. The guaranty is in form a bond, in the penal sum of $6,700 by Cobb as principal and Best as surety, reciting that Cobb has entered into a contract with Somers Lumber Company (hereafter called Somers), a copy whereof was annexed to the bond, and conditioned for the faithful performance by Cobb of that contract, and to reimburse and repay Somers for outlay incurred in making good any default, and to pay

all persons who have contracts directly with the principal for labor and materials. The bond also contains the following special clause: "and provided that any alterations which may be made in the terms of the contract, or any of the work to be done under it, or the giving by the said Somers Lumber Company of any extension of time for the performance of the contract, or any other forbearance on the part of either the Somers Lumber Company or the principal to the other, shall not in any way release the principal and the surety, or either of them, their heirs, executors, administrators, successors or assigns from their liability hereunder, notice to the surety of any such alteration, extension or forbearance being hereby waived."

After Cobb had been paid all but $1,392.60 of the contract price of $6,700 he came to Somers on April 23d, 1927 (a Saturday), and told Mr. Roberts of that company that he had a payroll of fourteen hundred and odd dollars and no money to meet it, and unless Somers would meet the payroll or put up the money he would have to quit. After a short colloquy, Roberts and Cobb went to see Best, who was asked, and refused, to advance the money for the payroll, and refused also to endorse Cobb's note, which Somers offered to cash with that endosement. Roberts and Cobb then went to see counsel for Somers, and counsel drew two papers—the first of which is a notice by Cobb to Somers that he cannot go on unless the $1,419.76 is advanced, and saying in part: "If it is not paid to-day, there is a possibility of a successful demand by the laborers for continued pay although they do not work until the amount is paid, and the further possibility that no one else will be allowed to work on the work which I agreed to do for you, until the same is paid." The other paper is a notice by Somers to Best which reads as follows:

"To Harry Best:

"Referring to the contract of December 27th, 1926, between Somers Lumber Co. and William H. Cobb, Jr., and your indemnity bond of the same date in which you agreed to indemnify us against loss, &c. We are appending a notice which was served upon us to-day by Mr. Cobb, which speaks for

itself. We have advanced the amount requested in order to prevent the existing peril.

"We are calling upon you to arrange with Mr. Cobb, or such other person as you may select, to complete the work in accordance with its terms and that you proceed to do so within forty-eight hours after the receipt of this notice, which time we regard as reasonable in the circumstances. If you fail to do so we shall feel at liberty to employ Mr. Cobb or any other person to complete the job and look to you for payment under the terms of the bond.

"It seems quite advisible for our benefit as well as yours that Mr. Cobb be employed to complete the work and this we shall do and have him continue without interruption.

"Dated April 23, 1927.

"SOMERS LUMBER CO.,
"HUBERT SOMERS, *Treas.*"

It is fairly plain from this document, and from other evidence in the case, that Cobb had either abandoned the contract, or had been discharged by Somers without protest. According to the testimony of Hubert Somers, he came to the Somers office that Saturday morning and said he could not go on. The brief for appellant says "he was discharged from the contract, and a notice [was] addressed to Somers Lumber Company but prepared by the attorney for that company," &c. The testimony is that after Best had refused to do anything in the matter, Somers made out a bank's counter check to the order of Cobb, dated April 23d, which is in evidence and shows Cobb's endorsement followed by "Paid 4/23/27," which apparently is the bank's stamp. The plain indications are that the check was made out, endorsed, and cashed by Cobb in the banking office, doubtless before noon on Saturday. These details are of some importance, as will presently be seen.

It is apparently claimed that this payment of $1,419.76 was a payment to Cobb as contractor on the contract, but it was not, or at least the jury were entitled to find that it was not. It is not clear whether the check was handed Cobb before or after the papers were served on Best, but it is quite

clear that it was after the first call on Best, at which the situation was explained and he had refused to do anything. At that time Cobb had been discharged or had resigned or abandoned as contractor, and had been taken on as a foreman of Somers, which corporation was the main contractor and obliged to complete the contract whether Cobb failed or not. And not only was Cobb then out of his employment as contractor, but it is plainly inferable from a reading of the case that he was then a mere conduit for transmitting to the laborers, some twenty in number, the week's wages due them, for which Cobb was primarily liable, but which on account of labor union rules had to be paid somehow unless the work was to stop while wages continued to run on over an idle period.

It is further inferable that Cobb passed on the money to the workmen. 1. The evidence shows that there was no stoppage of work. 2. Respondent's brief states without contradiction, "there is no dispute that the workmen had earned the $1,419.76 paid them" (the word "not" in the printed brief, is clearly shown by the context to be a clerical error). 3. In a colloquy arising out of defendants' motion to direct a verdict, the court said that "Best was to indemnify the Somers Lumber Company not only for the faithful performance of the contract, but also for the payment of wages, and the money to the extent of nineteen hundred and some odd dollars was paid by Somers for wages that were due when Cobb left, and under the terms of the bond they are recoverable," and counsel merely said "they are not suing for wages laid out." 4. In the same colloquy the court quoted part of the charge at a former trial, as follows:

"The Court: When I charged the jury before I said: 'The reason I charge you that the sum of $1,419.76 is properly included, provided you find the facts that I have suggested to you, is because the bond indemnifies Somers Lumber Company in labor claims as well as against other things which you will see when you read the conditions of the bond, so that if those labor claims were paid by Somers, and were owing by Cobb for the employment of carpenters and mechanics in

the completion and performance of the Cobb contract, then I charge you they are properly assessable against Best' " and announced that he would so charge the jury again. (5) At the outset of the charge he said "the reasonable cost of completion of the Cobb contract, plus the $1,419.76 which Somers paid for Cobb laborers on the 23d of April, 1927." Later in the charge the court said: "Now, then, there is another item of $1,419.76. There is no dispute but that Somers paid $1,419.76 to the employes who had worked under Cobb in the performance of the Cobb contract for the week or time preceding April 23d, 1927. There is no dispute but that Cobb defaulted in the payment of that money to those laborers or mechanics. And under the evidence as it is submitted and under the terms of the bond as it is before this court, I charge you that Somers is entitled to recover from Best that sum of $1,419.76 which it expended in payment of the labor claims that were outstanding on the Cobb job when the lumber company had to take it over." The first of these sentences was not challenged by an exception, so far as we can discover; the second appears as a ground of appeal, but is not argued or briefed.

It may seem strange that there is no direct evidence that the proceeds of the check to Cobb went to the laborers. Cobb was a witness, and could readily have been asked what he did with the money. But the fact that he was not so asked by either side is an indication that there was no dispute about that. This was a second trial, and the lawyers were not wasting time on undisputed facts. Defendant's motion to direct was predicated, not on any claim that the money did not go, or was not shown to have gone, to the workmen, but on the theory that wherever it ultimately went, it was in legal essence a payment to Cobb not as an ex-contractor and foreman, but as contractor, and consequently a discharge of the surety. We need not stop to consider whether the proviso in the surety bond, quoted above, is broad enough to cover such a situation. Suffice it to say that the jury were entitled to find that the payment was not on the contract, but to Cobb *qua* foreman to the use of the several workmen, and not

as contractor. Nor need we stop to consider whether a payment made outside the contract to stave off delay and probably greater loss arising out of labor union rules, is recoverable back from the surety, because that point is not raised. Ground No. 6, which is probably ineffective as failing to quote the language of the charge that is challenged (*Klein* v. *Shryer,* 106 *N. J. L.* 432), complains that the court permitted recovery for $1,419.76 as part of $4,976.09 without allowing for $1,392.60 balance of contract price unpaid. But this is unfounded in fact. The plaintiff's statement shows payments against the contract price up to the time of Cobb's abandonment, of $5,307.40. The contract was $6,700. Hence there remained unpaid on the contract $1,392.60. Further payments on the work up to completion, including the $1,419.76, brought the total payments up to $11,867.92, as against which was credited the full contract price plus extras of $183.89, or $6,883.89. The balance is $4,984.03, or about $10 more than the verdict of $4,974.09. Of course the $1,392.60 is part of the $6,700. To put it in another way, after the abandonment, plaintiff paid out $11,867.92 less $5,307.40,

or ........................................ $6,560.52

Crediting against this the unpaid balance of contract ................ $1,392.60

and extras ..................... 183.89

                        1,576.49

       Balance .......................... $4,984.03

There is a discrepancy between this and the verdict of a little less than ten dollars, as before, but that discrepancy is in favor of appellant, who naturally is in no position to complain of it.

No harmful error being shown, the judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 12.

*For reversal*—None.